1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WASHINGTON STATE NURSES ASSOCIATION, et al., | CASE NO. C22-0321-LK |
| Plaintiffs, | ORDER REQUESTING SUPPLEMENTAL BRIEFING |
| v. | |
| MULTICARE HEALTH SYSTEMS, | |
| Defendant. | |

This matter comes before the Court on Plaintiffs' Motion to Remand to State Court. Dkt. No. 15. For the reasons set forth below, the Court requests supplemental briefing to resolve the motion.

## I.       BACKGROUND

Defendant MultiCare Health Systems operates hospitals and clinics across the state of Washington. Dkt. No. 1-1 at 3. Plaintiffs Washington State Nurses Association, UFCW 3000, and SEIU Healthcare 1199NW (collectively, "the Unions") represent employees who work in various bargaining units at MultiCare's facilities. *Id.* at 2.

ORDER REQUESTING SUPPLEMENTAL BRIEFING - 1

**A.      MultiCare Makes Deductions from Employees' Paychecks**

MultiCare uses the Kronos program to process payroll for approximately 19,500 employees across its healthcare facilities. Following a criminal ransomware attack last year, the system was inoperable for approximately six weeks from December 12, 2021 through early 2022. Dkt. No. 1-1 at 3–4; Dkt. No. 8 at 2. While the system was inoperable, MultiCare directed employees to use other methods of keeping track of the hours they worked. Dkt. No. 1-1 at 4; Dkt. No. 8-2.

Because of its large number of employees and limited personnel resources, MultiCare was unable to use the alternate time records to pay employees in December 2021 and January 2022. Dkt. No. 8 at 3. Instead, for four pay periods across those two months, MultiCare issued "pay advances" whereby employees were paid an amount of money equal to the gross pay they earned in the pay period immediately preceding the hack for each pay period that passed before Kronos could be restored. Dkt. No. 1-1 at 4; Dkt. No. 8-2 at 1. MultiCare's email notifying employees of the pay advance plan also informed them that once Kronos was restored, the Time Stamp entries would be "pushed out to the timecards" and then managers would enter data from the written log. Dkt. No. 8-2 at 2. Employees would then have an opportunity to review their timecards before payroll processed the hours. *Id.* Finally, "[p]reviously paid advances" would be "reconciled with hours worked" in a "[p]ayroll true-up." *Id.*

In mid-February 2022, MultiCare notified employees by email that it had completed the "true-up" process to identify "any discrepancies between pay advances and pay calculated based on timecard hours." Dkt. No. 1-1 at 5; Dkt. No. 8-3 at 1. Employees who had been underpaid were allegedly paid the difference between what they had been paid and what they were owed. Dkt. No. 1-1 at 5; Dkt. No. 8 at 3. Other employees were informed that MultiCare's "true-up" process indicated that they had been overpaid. Dkt. No. 1-1 at 5; Dkt. No. 8-3 at 1.

1      The notification informed employees that MultiCare would begin the process of recouping

2 the alleged overpayments by withholding funds from employees' paychecks starting on March 18,

3 2022.  Dkt. No. 1-1 at 5; Dkt. No. 8-3 at 1. For alleged overpayments of $500 or less, MultiCare

4 planned to recoup the full amount from paychecks issued on March 18. *Id.* For alleged

5 overpayments of more than $500, MultiCare would recoup up to 25% of the total amount in one

6 paycheck and would continue recouping from subsequent paychecks until the full amount had been

7 repaid. *Id.* MultiCare informed employees that it intended to complete the recoupment process

8 within two months. *Id.* Some employees expressed concern about that schedule, so MultiCare

9 allowed employees to submit an alternative recoupment request and pay the alleged overpayment

10 back in different amounts, including in payments of 100%, 50%, 25%, or 10%. Dkt. No. 1-1 at 5;

11 Dkt. No. 8 at 3; Dkt. No. 8-4. MultiCare began recouping the overpayments by making deductions

12 from employees' March 18, 2022 paychecks. Dkt. No. 8 at 4–5.

13 **B.    The Unions File Suit**

14      The Unions filed their complaint and a motion for a temporary restraining order ("TRO")

15 to halt the deductions in King County Superior Court, but before the motion could be heard,

16 MultiCare removed the case to this Court. Dkt. No. 1. The Unions allege that MultiCare violated

17 Section 296-126-030 of the Washington Administrative Code by deducting the alleged

18 overpayments from employees' paychecks without satisfying the regulation's criteria to do so.

19 Dkt. No. 1-1 at 7–8. The regulation allows recoupment through paycheck deductions only if the

20 alleged overpayment was "infrequent and inadvertent," Wash. Admin. Code 296-126-030(4); the

21 Unions contend that MultiCare's overpayments were neither inadvertent nor infrequent, Dkt. No.

22 1-1 at 7–8.

23      The Unions also seek a declaratory judgment under Revised Code of Washington § 7.24

24 that "reducing employees' wages to make deductions not permitted by WAC 296-126-030, where

1  such deductions will result in employees being paid less than required by applicable collective

2  bargaining agreements, violates RCW 49.52.050(2)." Dkt. No. 1-1 at 9.

3      After MultiCare removed the case to this Court, the Unions filed an Emergency Motion to

4  Remand to State Court, or in the Alternative, for a Temporary Restraining Order. Dkt. No. 2. The

5  Court held a telephone conference with the parties regarding the motion on March 17, 2022. Dkt.

6  No. 11. After that conference, the parties filed a joint status report striking the Unions' emergency

7  motion and agreeing to a briefing schedule for the Unions' motion to remand. Dkt. No. 14. The

8  parties agreed that if the Court denies the Unions' motion to remand, the Unions will file a motion

9  for a preliminary injunction within 14 days of the Court's order. *Id.* at 2. The parties further agreed

10  that while those motions are pending, MultiCare will not make any further wage deductions for

11  overpayments, and before resuming wage deductions, MultiCare will "commence an audit of

12  alleged overpayments with which the Unions will not impede." *Id.* Pursuant to the parties' agreed

13  schedule, the Unions filed this motion to remand. Dkt. No. 15.

## II.      DISCUSSION

### A.      Legal Standards for Removal

16      28 U.S.C. § 1441 allows a defendant to remove an action filed in state court to federal

17  district court where the federal district court has original jurisdiction. Federal district courts "have

18  original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United

19  States." 28 U.S.C. § 1331.

20      The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction,"

21  and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the

22  first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "The 'strong presumption'

23  against removal jurisdiction means that the defendant always has the burden of establishing that

24  removal is proper." *Id*. Doubts as to removability must be resolved in favor of remanding the case

to state court. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003). If after removal it appears that the court lacks subject matter jurisdiction, the court must remand the case. 28 U.S.C. § 1447(c).

**B.   Legal Standards for Preemption and Request for Supplemental Briefing**

MultiCare argues that removal was proper because Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, completely preempts the Unions' state law claims. Dkt. No. 19 at 2–10. The Unions argue that the Court lacks subject matter jurisdiction over this matter because their complaint raises only state law claims that MultiCare has violated state wage laws. Dkt. No. 15 at 4–11.

Section 301 provides that "[s]uits for violation of contracts between an employer and a labor organization ... may be brought in any district court of the United States." 29 U.S.C. § 185(a). Although Section 301 contains no express language of preemption, "the Supreme Court has long interpreted the LMRA as authorizing federal courts to create a uniform body of federal common law to adjudicate disputes that arise out of labor contracts." *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1151 (9th Cir. 2019) (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985); *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962)). Although normally federal preemption is a defense that does not authorize removal to federal court, Section 301 has such "extraordinary pre-emptive power" that it converts a state law complaint alleging a violation of a provision of a labor contract "into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* at 1152 (cleaned up). Therefore, a complaint that raises claims preempted by Section 301 "raises a federal question that can be removed to a federal court." *Id.* However, such a question exists only where the complaint "necessarily requires the court to interpret an existing provision of a CBA [collective bargaining agreement] that can reasonably be said to be relevant to the resolution of the dispute." *Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683, 693 (9th

Cir. 2001) (en banc). The "'term 'interpret' is defined narrowly—it means something more than 'consider,' 'refer to,' or 'apply.'" *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1033 (9th Cir. 2016) (quoting *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000)).

Here, the parties focus their briefing on whether the Court must interpret the CBAs in order to resolve the Unions' first claim under Section 296-126-030 of the Washington Administrative Code. Dkt. No. 15 at 7–11; Dkt. No. 19 at 4–10. But the parties largely ignore the Unions' second claim, which seeks a declaratory judgment under Revised Code of Washington § 7.24 that "reducing employees' wages to make deductions not permitted by WAC 296-126-030, where such deductions will result in employees being *paid less than required by applicable collective bargaining agreements*, violates RCW 49.52.050(2)." Dkt. No. 1-1 at 9 (emphasis added).[1]

Section 49.52.050(2) of the Revised Code of Washington provides that any employer who "[w]ilfully and with intent to deprive the employee of any part of his or her wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract . . . [s]hall be guilty of a misdemeanor." An employer who violates that statute "shall be liable in a civil action by the aggrieved employee or his or her assignee to judgment for twice the amount of the wages unlawfully rebated or withheld by way of exemplary

---

[1] The Court notes that it directed the parties to be prepared to address the following questions in advance of a hearing that was later stricken to allow the parties a full briefing schedule:

- If the Court concludes that the Unions' claims for injunctive relief and a declaratory judgment with respect to WAC 296-126-030 are not preempted because the Unions' claims require the Court to decide only whether the manner of MultiCare's recoupment is legally permissible under WAC 296-126-030, not to determine the correct recoupment amounts, *but that the Unions' claim for declaratory judgment with respect to RCW 49.52.050(2) is preempted* such that this Court has jurisdiction over this case:

  - Does the Norris-LaGuardia Act ("NLGA"), 29 U.S.C.A. § 104(c), prohibit this Court from issuing the requested TRO?
  - If the NLGA does not prohibit this Court from issuing a TRO, what standard governs whether the Unions are entitled to a TRO, and have the Unions met this standard?

Dkt. No. 13 at 1–2 (emphasis added).

damages, together with costs of suit and a reasonable sum for attorney's fees." Wash. Rev. Code § 49.52.070. Neither party directly addresses whether the Court will be required to interpret their CBAs to resolve that claim or whether the claim is preempted. The Court therefore requests supplemental briefing on those issues.

In addition, while the Unions stress that at this point that they are only seeking a declaration that MultiCare improperly used "self-help" to recoup the overpayments and an injunction to prevent it from resuming that process, the Unions acknowledge that they will seek additional remedies, possibly for individual union members, at some point: "At some point down the road, the parties may have to sort out their contractual disputes regarding the overpayments." Dkt. No. 15 at 10. The Unions' filings do not clarify whether they will seek that relief through this action or in another forum. Nor does their complaint clarify the issue. Dkt. No. 1-1 at 9 (seeking injunctive relief, declaratory judgments, and "[s]uch other and further relief as the Court may deem appropriate.").

Therefore, the Court requests that the parties provide supplemental briefing regarding (1) whether the Court will be required to interpret the CBAs to resolve the Unions' second cause of action, and (2) whether the Unions will seek monetary relief for individual employees in this litigation. The parties are directed to submit their supplemental memoranda of no more than 12 pages in length by June 21, 2022.

### III.   CONCLUSION

For the foregoing reasons, the Court requests supplemental briefing as set forth above regarding the Unions' motion to remand, Dkt. No. 15. The Clerk is directed to renote the Unions' motion to remand for June 21, 2022.

Dated this 7th day of June, 2022.

Lauren King
United States District Judge

ORDER REQUESTING SUPPLEMENTAL BRIEFING - 8